IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| J.N.F.S. ENGINEERING COMPANY, ) | 4:06CV3245 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| GIBSON TECHNICAL SERVICES, ) | |
| INC. ) | |
| ) | |
| Defendant. ) | |

This a breach of contract suit. A Georgia corporation, Gibson Technical Services, Inc. ("Gibson") entered into a written agreement with J.N.S.F. Engineering Company ("JNSF"), a Nebraska corporation, whereby JNSF was to provide work to Gibson in connection with the construction and installation of microwave towers in the state of Washington. JNSF brought suit in Nebraska state court, alleging it was underpaid for its work in Washington. Gibson removed the action to this court and filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (Filing 6.) After review of the briefs and evidence submitted by the parties, I conclude that there are insufficient contacts between Gibson and Nebraska to permit the exercise of personal jurisdiction and will grant the motion.

### *I. BACKGROUND*

The jurisdictional facts as established by the declarations and exhibits submitted by the parties are as follows.[1]

---

[1] The declaration of Stuart Gibson is found at filing 7-2 and is cited as "Gibson Decl. ¶ __." The declaration of James Noe, the President of JNFS, is found at Exhibit 1 to Filing 10 and is cited as "JNFS Decl. ¶ __." Although the Complaint references a contract attached as an exhibit, no exhibit was attached to the Complaint. Gibson

Gibson is incorporated in Georgia and its principal place of business is in Georgia. (Gibson Decl. ¶ 3.) JNFS is incorporated in Nebraska and its principal place of business is in Nebraska. (JNFS Decl. ¶3.)

An employee of Gibson mentioned to an employee of JNFS that Gibson had a job in Seattle, Washington and suggested that if JNFS was interested in bidding on work to be performed in Washington it should submit a proposal. This communication did not occur in Nebraska. JNFS did submit a proposal, by mail, to Gibson in Georgia. JNSF was selected by Gibson to provide services on the Washington job. (Gibson Decl. ¶ 15.)

The terms of a contract between Gibson and JNFS were negotiated by James Noe on behalf of JNFS from Noe's location in Nebraska, primarily by telephone to Gibson employees in Georgia. (JNSF Decl. ¶ 5.) Once the terms were finalized, Gibson sent a written agreement to Noe at the JNFS home office in Nebraska. (Id. ¶ 6.) After it was executed by Noe on behalf of JNFS, the agreement was sent to Gibson in Georgia, where it was signed by representatives of Gibson. (Id., Gibson Decl. ¶ 16.) That agreement is the Contract. The Contract does not contain a choice of law provision.

The Contract required JNSF to provide a crew of people to provide work, labor and services for a portion of the construction of microwave towers located in the state of Washington. (JNSF Decl. ¶ 4.) JNSF did not provide a product as part of its obligations under the Contract. (Gibson Decl. ¶ 19.) The services to be performed under the Contract by Gibson were performed in Georgia and Washington. No work was performed by Gibson in Nebraska. (Id. ¶ 17.)

---

agrees that the contract submitted as an exhibit to the Noe declaration is the contract referenced in the Complaint. (Filing 12, Gibson Reply Br. at 2.) That contract is exhibit A to exhibit 1 to filing 10 and is cited as "Contract ¶ __."

Although the workers provided by JNSF labored at the Washington job site, in conversations between Noe of JNSF and Gibson employees, it was made clear that some of the subcontractors and crew members would be from the state of Nebraska. Gibson had actual knowledge that Blue River Electric Co., with offices in Seward, Nebraska, was a subcontractor that JNSF would use on the job, and that the president of Blue River Electric had to travel to Washington and obtain a journeyman's license in Washington before Blue River Electric could work on the job. It was also made clear that Noe would be the representative of JNSF, insuring the performance of the workers provided by JNSF. (JNSF Decl. ¶ 7.)

During the course of performance under the Contract, Gibson communicated "numerous times" by United States mail sent to the JNFS home office in Seward, Nebraska and by email to JNFS. Noe of JNSF was in Nebraska when he received some of the email communications. Gibson employees routinely had telephone conversations with Noe regarding the work being performed, the number of crews needed for the job, and other issues related to performance under the Contract, and Noe was in Nebraska for the majority of the telephone conversations. (JNSF Decl. ¶¶ 8, 10.) "Gibson knew from these communications that [Noe] was monitoring the workers and the progress on the job in Washington both from the state of Nebraska and also by [his] presence on occasion in the state of Washington." (Id. ¶ 10.) All discussions regarding JNSF's assertions that it was underpaid under the Contract were held between Noe and Gibson representatives while Noe was in Nebraska. (Id. Decl. ¶ 12.)

The Contract provides that "[Gibson] agrees to pay [JNSF] for work on the basis of the rates set forth by [Gibson] and agreed upon by [JNSF], including all applicable sales, use and other tax payable by [JNSF]." (Contract ¶ 8(a).) Invoices for payment under the Contract were generated in Nebraska and sent to Gibson in Georgia via United States mail. (JNSF Decl. ¶ 11.) From Georgia, Gibson mailed payments to JNSF in Nebraska. There were approximately five payments. (Gibson

Decl. ¶ 24.)  The payments were deposited into a JNSF bank account maintained in Nebraska.  (JNSF Decl. ¶ 11.)

Gibson has not been present in Nebraska or conducted any business activities in Nebraska for over ten years.  (Gibson Decl. ¶¶ 22-23.)  Gibson does not now own or lease real estate or personal property or have bank accounts in Nebraska and did not own or lease real estate or personal property or have bank accounts in Nebraska at any time relevant to this action.  (Id. ¶ 4.)  Gibson has never operated an office in Nebraska.  (Id. ¶5.)  During the time relevant to this action, Gibson did not have any employees, agents, or representative in the state of Nebraska; did not advertise or solicit business in Nebraska; did not conduct business in Nebraska; was not registered to do business in Nebraska; and did not have a registered agent in Nebraska for service of process.  (Id. ¶¶ 6-10.)  Gibson has not availed itself of the courts of Nebraska for service of process or to initiate litigation.  (Id. ¶ 11.)  Gibson has not consented to jurisdiction in Nebraska and "never expected to be subject to a suit arising in Nebraska with respect to the transaction involving [JNSF]."  (Id. ¶ 12.)

Most of the physical evidence and many of JNSF's witnesses are located in Nebraska.  (JNSF Decl. ¶ 12.)  All potential Gibson witnesses reside in Georgia or Washington.  (Gibson Decl. ¶ 25.)

## II. DISCUSSION

The parties agree that the Nebraska long-arm statute confers jurisdiction to the fullest extent permitted by federal constitutional due process considerations, and that the issue is whether Gibson has sufficient contact with Nebraska to permit the exercise of personal jurisdiction over it.  JNSF need only make a prima facie showing of personal jurisdiction over Gibson to survive the motion to dismiss for lack of personal jurisdiction.  Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE),

Ltd., 89 F.3d 519, 522 (8th Cir. 1996). This court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor. Id.

In order to exercise personal jurisdiction over a nonresident defendant, due process requires that such defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend "'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463(1940)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. Id.

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." Id. at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). The fourth and fifth factors are of secondary importance and are not determinative. Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir.

1983). In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

It is the third element of the above test--the relationship between the cause of action and the contacts--which gives rise to the distinction between specific and general jurisdiction. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir.1994) (citing Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir.), cert. denied, 510 U.S. 814 (1993)).

If specific jurisdiction is asserted, "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." Burlington Indus., Inc., 97 F.3d at 1103. Physical presence in the state or physical contacts with the state are not a necessary component of "minimum contacts." U.S. Kids, 22 F.3d at 820 (citing Burger King, 471 U.S. at 476). In contrast, general personal jurisdiction allows a defendant whose contacts with a forum are "continuous and systematic" to be sued in the forum on any basis. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280-81 (8th Cir. 1991); Gray v. Lewis & Clark Expeditions, Inc., 12 F.Supp. 2d 993, 996-97 (D. Neb. 1998).

Gibson had attenuated contacts with Nebraska. Gibson entered into a contract with a Nebraska corporation, and had no prior course of dealing with that corporation. A conversation between a Gibson employee and a JNSF employee led to JNSF, the Nebraska corporation, submitting a bid to Gibson in Georgia. Gibson accepted the bid in Georgia. A contract was negotiated by telephone and email. That contract was formed in Georgia when Gibson signed it. The contract called for JNSF to provide

workers to labor on a job in Washington. Gibson knew that some of the workers would be Nebraska residents. Gibson was aware that Noe, the president of JNSF, monitored JNSF's performance from Nebraska and in Washington. During the course of performance, there were telephone calls between Gibson employees in Georgia and JNSF employees in Nebraska. Gibson mailed five checks to JNSF in Nebraska as payment for the Washington work.

These limited contacts with Nebraska do not satisfy the Due Process Clause under either a specific or general jurisdiction theory. They do not establish that Gibson purposely directed its activities at Nebraska residents or that Gibson's contacts with Nebraska were continuous and systematic in any way. "Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state.'" Bell Paper Box, Inc., v. Trans Western Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995) (quoting Iowa Elec. Light & Power Co. v. Atlas Corp., 603 F.3d 1301, 1303 (8th Cir. 1979), cert. denied, 445 U.S. 911 (1980)). It is not the fact of the contract, but the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . .that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." Burger King, 471 U.S. at 479. Here, the contract clearly required JNSF to provide workers to assist in the construction of microwave towers in Washington. None of JNSF's performance under the contract, including Noe's supervision, was required to take place in Nebraska. Gibson directed its activities at Washington, not Nebraska. Gibson did not invoke the benefits or protection of Nebraska laws. Bell Paper Box v. Trans Western Polymers, 53 F.3d at 922 (when out of state buyer never visited forum, contract called for seller to manufacture goods in forum but to make delivery outside forum, out of state buyer did not seek benefits of forum police or fire protection and no minimum contacts present). Gibson's isolated contract with a Nebraska company for construction work to be performed in Washington is insufficient to establish personal jurisdiction.

JNSF argues that since Gibson knew that some of the workers JNSF would provide were from Nebraska, and that at least one Nebraska resident was required to obtain a Washington journeyman's license before that Nebraska resident's company could work on the Washington job, "the representatives of Gibson knew, prior to work being performed under the [Contract] that the terms and provisions of the written agreement between the parties would affect citizens and businesses from the state of Nebraska." (JNSF Decl. ¶ 7.) However, "'foreseeability' [of an impact within the forum] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." Bell Paper Box v. Trans Western Polymers, 53 F.3d at 922 (quoting World-Wide Volkswagen, 444 U.S. at 295) (no minimum contacts even though out of state buyer anticipated that forum seller would manufacture goods in forum).

The interstate telephone calls and email do not establish minimum contacts. Id. at 923 (when out of state buyer did no more than enter into contract with and communicate interstate with forum seller/manufacturer, and delivery was outside forum, no minimum contacts present); Porter v. Berall, 293 F. 3d 1073, 1076 (8th Cir. 2002) ("[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause").

JNSF asserts that the Contract contemplated payment by Gibson of taxes to Nebraska. It does not. Paragraph 8(a) of the Contract simply provides that Gibson agrees to pay JNSF "for work on the basis of the rates set forth by [Gibson] and agrees upon by [JNSF], including all applicable sales, use and other tax payable by JNSF." (Contract ¶ 8(a).) This clause merely provides that Gibson will reimburse JNSF for taxes paid by JNSF, and there is no showing that any taxes were paid at all, or paid to Nebraska.

### *III. CONCLUSION*

For the foregoing reasons, I will grant Gibson's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Judgment will be entered by separate order.

IT IS ORDERED:

1. Gibson's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (filing 6) is granted; and

2. Judgment of dismissal will be entered by separate order.

January 3, 2007          BY THE COURT:

                         *s/Richard G. Kopf*
                         United States District Judge